# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
### AT OWENSBORO

HERBERT R. SMITH                                            **PLAINTIFF**

v.                                       **CIVIL ACTION NO. 4:09CV-57-M**

DARWIN DENNISON *et al.*                                   **DEFENDANTS**

## <u>MEMORANDUM OPINION</u>

This matter is before the Court on initial review of the *pro se*, *in forma pauperis* complaint pursuant to 28 U.S.C. § 1915(e) and *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997). For the reasons that follow, the action will be dismissed.

## I.

Plaintiff Herbert R. Smith filed a complaint pursuant to 42 U.S.C. § 1983 and under the *Bivens* doctrine[1] while incarcerated in the Grayson County Detention Center (GCDC), but he has since been released from custody. Plaintiff sues GCDC Jailer Darwin Dennison, GCDC Chief Deputy Jason Woosley, GCDC Deputy Brooks, Unknown Medical Staff at GCDC, Christian County Detention Center Jailer, and Unknown United States Marshals in their individual capacity. As relief, Plaintiff seeks declaratory and injunctive relief as well as compensatory, general, special, and exemplary damages.

Plaintiff claims that on May 19, 2009, Unknown United States Marshals took physical custody over him, a smoker for over 55 years, at the Kentucky State Penitentiary and transported him to the Christian County Detention Center, a non-smoking facility. Plaintiff was not allowed to smoke at the Christian County Detention Center during his stay from May 19th through May

---

[1] The *Bivens* doctrine is a judicially created counterpart to a § 1983 action and pertains to suits filed against federal officials who have allegedly denied a plaintiff's constitutional rights. *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 390-97 (1971).

27, 2009, on which date Unknown United States Marshals transported him to the GCDC, also a non-smoking facility. During transport, the Unknown United States Marshals refused to allow Plaintiff to smoke.

While at GCDC from May 27, 2009, until his release on July 2, 2009, Plaintiff was not allowed to smoke. On June 15, 2009, "Plaintiff got fed up with the unconstitutional ways he was being treated and filed a grievance at the GCDC claiming he was suffering severe physical and psychological withdraw symptoms" and requesting that he be allowed to smoke "immediately." Defendant Brooks responded that GCDC is a non-smoking jail. Plaintiff additionally asserts that GCDC does not provide "smoking cessation treatment" through its medical department and that his financial status prevented him from payment for such treatment while incarcerated. Plaintiff reports that he became "a nervous wreck"; had problems sleeping; traded his food for caffeine; had constant stomach problems, throwing up at least three times a day; developed a bad attitude, resulting in his being assaulted three times by other inmates; and became "delusional" believing he smelled smoke.

Plaintiff also claims that, while at GCDC, he was charged $4.00 for hygiene items contained in two indigent packages and that the jail deducted the $4.00 from his jail account when he received $20.00. He filed a grievance about the incident on June 15, 2009, and in the response, Defendant Woosley "flatly refused to refund" the $4.00.

**II.**

When a prisoner initiates a civil action seeking redress from a governmental entity, officer or employee, the trial court must review the complaint and dismiss the complaint, or any portion of the complaint, if the court determines that it is frivolous or malicious, fails to state a

claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  *See* 28 U.S.C. §§ 1915A(b)(1), (2); *McGore*, 114 F.3d at 604.

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  The trial court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless.  *Id.* at 327.

In order to survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, -- U.S. -- , 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true."  *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)).  "But the district court need not accept a 'bare assertion of legal conclusions.'"  *Tackett*, 561 F.3d at 488 (quoting *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'  Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555, 557).

# III.

## A. Smoking claims

Plaintiff alleges that Defendants' refusal to allow him to smoke violated the *Ex Post Facto* Clause and the Fifth, Eighth, and Fourteenth Amendments to the U.S. Constitution.

### 1. Eighth Amendment

"To be cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care of the prisoner's interests or safety. . . . It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, . . ." *Wilson v. Seiter*, 501 U.S. 294, 298-99 (1991) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)) (emphasis omitted).

A viable Eighth Amendment claim must satisfy both an objective component and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). The objective component requires that the deprivation be "sufficiently serious." *Wilson*, 501 U.S. at 298. This component is contextually driven and is "responsive to 'contemporary standards of decency.'" *Hudson v. McMillian*, 503 U.S. 1, 8 (1992) (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). An inmate must show that he was deprived of "the minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). The subjective component requires the defendant to act with "deliberate indifference" to a prisoner's health or safety. *Wilson*, 501 U.S. at 302-03. "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that

a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837-38 (citations omitted).

The Eighth Amendment "does not mandate comfortable prisons," *Rhodes*, 452 U.S. at 349, nor does it provide prisoners a right to smoke. *See Jackson v. Burns*, No. 95-3359, 1996 WL 362739, at *1 (10th Cir. June 28, 1996); *Beauchamp v. Sullivan* 21 F.3d 789, 790 (7th Cir. 1994); *Muff v. Collins*, Civil Action No. 2:08-cv-1027, 2009 WL 233561, at *2 (S.D. Ohio Jan. 29, 2009); *Westberg v. Russell*, No. 1:07-CV-715, 2008 WL 205208, at *3 (W.D. Mich. Jan. 23, 2008); *Nowaczyk v. Shaheen*, No. Civ. 99-351-M, 2001 WL 274790, at *4 (D.N.H. Jan. 18, 2001). Plaintiff has not shown that any Defendant, in refusing to allow him to smoke, deprived him of a basic human need such as adequate food, clothing, shelter, or medical care. While Plaintiff alleges withdrawal symptoms at GCDC, which were no doubt unpleasant, he does not allege facts which rise to the level of demonstrating a serious medical need. Moreover, the record is devoid of any allegations that he ever sought and was denied appropriate *medical* treatment for any of his purported withdrawal symptoms. The only "treatment" he requested was "smoking cessation treatment," and prisoners have no constitutional right to a smoking cessation program. *See Moore v. Brown & Williamson Tobacco, Corp.*, No. C 06-02150 SBA (PR), 2009 WL 192448, at *3 (N.D. Cal. Jan. 23, 2009). Thus, he fails to demonstrate any deliberate indifference by any GCDC Defendants. The Eighth Amendment claim must, therefore, be dismissed for failure to state a claim upon which relief may be granted.

### 2. *Fifth and Fourteenth Amendments*

Neither the Fifth nor Fourteenth Amendment creates a liberty interest in smoking, and Plaintiff has shown no state-created liberty interest requiring due process protection as he fails to demonstrate an "atypical and significant hardship on [him] in relation to the ordinary incidents of

5

prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995); *Jones v. Toombs*, No. 95-1395, 1996 WL 67750, at *1 (6th Cir. Feb. 15, 1996) (finding that denial of smoking privileges was "an ordinary incident of prison life that did not impose an atypical and significant hardship"). Consequently, Plaintiff has failed to state a Fifth or Fourteenth Amendment due process claim.

### 3. Ex Post Facto Clause

Plaintiff alleges that Defendants' refusal to allow him to smoke violated the *Ex Post Facto* Clause because the law in effect on January 24, 1978, when he began his federal sentence, allowed him to smoke anywhere. "The Constitution's two *Ex Post Facto* Clauses prohibit the Federal Government and the States from enacting laws with certain retroactive effects." *Stogner v. California*, 539 U.S. 607, 610 (2003) (citing Art. I, § 9, cl. 3 (Federal Government); Art. I, § 10, cl. 1 (States)). The U.S. Supreme Court has set forth four categorical descriptions of *ex post facto* laws:

> 1st. Every law that makes an action done before the passing of the law, and which was innocent when done, criminal; and punishes such action. 2d. Every law that aggravates a crime, or makes it greater than it was, when committed. 3d. Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed. 4th. Every law that alters the legal rules of evidence, and receives less, or different, testimony, than the law required at the time of the commission of the offence, in order to convict the offender. All these, and similar laws, are manifestly unjust and oppressive.

*Stogner*, 539 U.S. at 612 (quoting *Calder v. Bull*, 3 U.S. (3 Dall.) 386, 390-91, 1 L. Ed. 648 (1798)). Plaintiff has demonstrated none of these *ex post facto* circumstances. He has not been punished for an act which was innocent at the time it was committed, and his punishment has not been increased beyond his original sentence. Plaintiff was merely placed in detention facilities that had a smoking ban in place. The *ex post facto* claim, therefore, must be dismissed for failure to state a claim upon which relief may be granted.

## B. Charging for hygiene items

Plaintiff claims that, even though he was indigent, GCDC deducted $4.00 for hygiene items from his jail trust account when funds were posted. He claims that this constituted "an illegal seizure of [his] property by deleterious, arbitrary, and willful means," violating his rights under the Fourth, Fifth, and Fourteenth Amendments and bringing "into question federal racketeering laws violation by GCDC."

Plaintiff fails to state a cognizable Fourth Amendment claim with respect to the jail's deduction of $4.00 from his account during his incarceration. "Since the exigencies of prison life authorize officials indefinitely to dispossess inmates of their possessions without specific reason, any losses that occur while the property is in official custody are simply not redressable by Fourth Amendment litigation." *Hudson v. Palmer*, 468 U.S. 517, 539 (1984) (O'Connor, J., concurring); *see also Thieleman v. County of Aransas, Tex.*, Civil No. CC-08-78, 2010 WL 610651, at *5 (S.D. Tex. Feb. 17, 2010) (dismissing claim that taking money from prisoner's account constitutes illegal seizure "because plaintiff is in prison, and as such, he is no longer guaranteed the protections of the Fourth Amendment").

> That the Fourth Amendment does not protect a prisoner against indefinite dispossession does not mean that he is without constitutional redress for the deprivations that result. The Due Process and Takings Clauses of the Fifth and Fourteenth Amendments stand directly in opposition to state action intended to deprive people of their legally protected property interests. These constitutional protections against the deprivation of private property do not abate at the time of imprisonment.

*Hudson v. Palmer*, 468 U.S. at 539 (O'Connor, J., concurring).

As to the Fifth Amendment claim, no taking occurs absent a showing that available remedies have been pursued and have failed to provide adequate compensation. *Id.* Plaintiff makes no such showing.

To prevail on a Fourteenth Amendment procedural due process claim, a plaintiff must 1) demonstrate that he is deprived of property as a result of established state procedure that itself violates due process rights; or 2) prove that the defendants deprived him of property pursuant to a "random and unauthorized act" and that available state remedies would not adequately compensate for the loss. *See Macene v. MJW, Inc.*, 951 F.2d 700, 706 (6th Cir. 1991).

While prisoners have a protected property interest in their money, *see Hampton v. Hobbs*, 106 F.3d 1281, 1287 (6th Cir. 1997), Plaintiff has not shown that he has been "deprived" of that interest. The $4.00 was deducted from his account in exchange for the hygiene packages. *See, e.g., Bailey v. Carter*, 15 F. App'x 245, 251 (6th Cir. 2001) ("The [medical] copayment fee was deducted from their accounts in exchange for medical services."); *Sturkey v. Ozmint*, C/A No. 8:07-1502-MBS, 2009 WL 649569, at *2 (D.S.C. Mar. 11, 2009) ("[D]ebits such as those made for filing fees, medical services, and expenses are not "deprivations" because the inmate has been provided with a service or good in exchange for the money debited."). Even if Plaintiff were deprived of his property interest, he has failed to allege that the state post-deprivation procedures are inadequate to remedy the deprivation. *Parratt v. Taylor*, 451 U.S. 527, 543-44 (1981), *rev'd on other grounds by Daniels v. Williams,* 474 U.S. 327 (1986)); *Vicory v. Walton*, 721 F.2d 1062 (6th Cir. 1983). The Sixth Circuit has found that Kentucky's statutory remedy for such losses is adequate within the meaning of *Parratt. See Wagner v. Higgins*, 754 F.2d 186, 191-92 (6th Cir. 1985).

Finally, Plaintiff's claim that the deduction brings "into question federal racketeering laws violation by GCDC" is broad and conclusory and fails to state a cognizable claim. *See Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001) (explaining that the court is not

required to accept non-specific factual allegations and inferences or unwarranted legal conclusions).

### C. State-law claims

Plaintiff alleges violations of Sections 2, 10, 19, and 254 of the Kentucky Constitution and a medical malpractice claim.  Section 1367(c) of Title 28 of the United States Code provides, in pertinent part, that "[t]he district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction."  § 1367(c)(3).  Having determined that all federal claims over which this Court has original jurisdiction should be dismissed, this Court declines to exercise supplemental jurisdiction over the remaining state-law claims, *see United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966), and those claims will be dismissed without prejudice.

The Court will enter a separate Order dismissing the instant action.

Date:

cc:     Plaintiff, *pro se*
        Defendants
4414.005

9